CAMERON COUNTY v. FOX. (No. 645–4131.)

Commission of Appeals of Texas, Section B. Feb. 15, 1928.

1. Taxation ⬒549(1)—"Total taxable valuation" within law, authorizing payment of premium on collector's bond where valuation exceeds $30,000,000, includes only property assessed for county and state purposes as shown by official tax roll (Rev. St. 1911, arts. 7608, 7610, as amended by Laws 1917, c. 146, § 1).

"Total taxable valuation" within meaning of Rev. St. 1911, arts. 7608, 7610 as amended by Laws 1917, c. 146, § 1, authorizing payment of premiums on collector's bond in case of valuation exceeding $30,000,000, includes only such property within county assessed for county and state purposes as shown by official tax roll, and taxable valuations of drainage or other districts cannot be included as being but a segregation of a portion of total taxable values of county for purposes of levying special taxes thereon.

2. Taxation ⬒549(1)—Commissioners' court, in ascertaining total taxable valuation for purpose of determining right to pay premium on collector's bond, is limited to valuation of tax roll (Rev. St. 1911, arts. 7608, 7610, as amended by Laws 1917, c. 146, § 1).

Commissioners' court, in determining right of tax collector to recover premium paid on bond, as provided by Rev. St. 1911, arts. 7608, 7610, as amended by Laws 1917, c. 146, § 1, in case total taxable valuation exceeds $30,000,000, is limited to taxable valuations as shown by official tax rolls, in view of fact that Legislature fixed no method of ascertaining such total taxable valuation.

3. Counties ⬒206(1)—Unauthorized action of commissioners' court in allowing claim for premium on tax collector's bond held subject to collateral inquiry (Rev. St. 1911, arts. 7608, 7610, as amended by Laws 1917, c. 146, § 1).

Where, under Rev. St. 1911, arts. 7608, 7610, as amended by Laws 1917, c. 146, § 1, commissioners' court was wholly lacking in power or authority to allow claim of tax collector for premium on bond, issue of fact involved relative to ascertainment of total taxable valuation was subject to collateral inquiry.

**4. Counties ☞206(1)—To sustain allowance of claim dependent on amount of total taxable valuation, it will not be presumed that commissioners' court found different valuation than shown by tax rolls (Vernon's Sayles' Ann. Civ. St. 1914, art. 7564; Rev. St. 1911, arts. 7608, 7610, as amended by Laws 1917, c. 146, § 1).**

Commissioners' court, having duty, under Vernon's Sayles' Ann. Civ. St. 1914, art. 7564, of inspecting and approving official tax rolls showing total taxable valuation of county, it will not be presumed that it found a different total taxable valuation in determining right to allow premium on tax collector's bond under Rev. St. 1911, arts. 7608, 7610, as amended by Laws 1917, c. 146, § 1.

**5. Counties ☞47—Commissioners' court must judicially notice matters which it is required to pass on.**

Commissioners' court must take judicial knowledge of matters which the law requires it to pass on.

**6. Counties ☞207(2)—County may recover voluntary payments made without lawful authority.**

Payment, pursuant to allowance by commissioners' court, though being voluntarily made, can be recovered in an action by the county, where such payment was without lawful authority.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by Cameron County against J. J. Fox. Judgment for plaintiff was reversed by the Court of Civil Appeals (257 S. W. 1111), and plaintiff brings error. Judgment of the Court of Civil Appeals reversed, and that of the trial court affirmed.

Spears & Montgomery, of San Benito, for plaintiff in error.

R. A. Hightower and Seabury, George & Taylor, all of Brownsville, for defendant in error.

LEDDY, J. The defendant in error, as tax collector of Cameron county, executed two official bonds, one in favor of the Governor of the state in the sum of $62,500; the other in favor of the county judge of Cameron county, in the sum of $100,000. The premiums on these bonds amounted to $650. He thereafter presented a claim against Cameron county for the amount of these premiums, and the same was audited and approved by the county auditor, and approved and ordered paid by the commissioners' court of the county. Voucher was issued in favor of defendant in error, indorsed by him, and paid by the county.

At the time the claim was passed upon by the commissioners' court, the members thereof were of the opinion that it could lawfully be paid. Subsequently, however, the commissioners' court concluded that the claim was paid without lawful authority, and suit was brought by the county to recover from defendant in error the amount paid in satisfaction of the claim, resulting in a judgment in favor of the county. The Court of Civil Appeals for the Fourth Supreme Judicial District reversed the judgment of the trial court, and rendered judgment in favor of defendant in error.

The holding of the Court of Civil Appeals is predicated upon the proposition that the commissioners' court, in the exercise of its general jurisdiction to audit and settle accounts against the county, had the right to determine whether or not such claim was one properly chargeable against the county; and that, having determined that it was, in the absence of a review by the district court, the judgment became final and conclusive, and was not subject to collateral attack. See 257 S. W. 1111.

Upon the trial of this case, the following admission was made by the parties:

"* * * That the taxable values of the county were $23,606,240, as assessed for state and county purposes; supplementary rolls $330,900, said two items aggregating $23,937,140; that the taxable values of drainage district No. 2, Cameron county, were $758,400; that the taxable values of drainage district No. 3, Cameron county, were $5,424,400, the last two items aggregating the sum of $6,182,800; that said two items covered the taxable values in said two districts for district taxation; that the total state and county taxable values and the district taxable values, as shown by the above figures, are $30,119,940; and that the commissioners' court, at the time of approving and ordering paid the $650 on the claim in controversy, knew of the above valuations."

Articles 7608 and 7610 of the Revised Statutes of 1911, as amended by the act of 1917 (chapter 146), read as follows:

"Article 7608. Every collector of taxes, * * * before entering upon the duties of his office, shall give bond * * * payable to the Governor and his successors in office, in a sum which shall be equal to forty (40) per cent of the whole amount of the state tax of the county as shown by the last preceding assessment. * * *"

"Article 7610. Collectors of taxes shall give a like bond, with like conditions, to the county judge of their respective counties and their successors in office in a sum not less than forty (40) per cent of the whole amount of the county tax, as shown by the last preceding assessment. * * * In the event the bonds required under the terms of this article and also under article 7608 or either thereof, and [are] executed by a satisfactory surety company or companies or by any private party or parties as surety or sureties thereon in counties with a total taxable valuation of thirty million ($30,000,000) dollars or more, the county of which the principal in said bonds is tax collector shall pay a reasonable amount as premium on said bond or bonds which amount shall be paid out of the

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

general revenue of the county upon presentation of the bill therefor to the commissioners' court of the county properly authenticated as required by law in other claims against the county, and should thereby [be] any controversy as to the reasonableness of the amount claimed, as such premium, such controversy may be determined by any court of competent jurisdiction."

Defendant in error insists that his claim against the county for premium paid on his official bond was valid because Cameron county had a total taxable valuation in excess of $30,000,000. It is shown without dispute that the taxable values, as assessed for state and county purposes, aggregated $23,937,140. It is attempted to add to this valuation the taxable values of two drainage districts situated in said county, which aggregated the sum of $6,182,800, and it is asserted that, when the valuations of such districts are thus added, the total valuation exceeds $30,000,000, and that such method of arriving at the total taxable valuations is permissible under the statute.

[1] We think the term "total taxable valuation" was intended to mean the valuation of all property within the county assessed for county and state purposes as shown by the official tax rolls; to hold otherwise would require the consideration of the same values twice. The taxable valuation for the drainage districts was not other and different property from that included in the valuation for state and county taxation, but was the identical property already valued for such purposes. There can be but one "total taxable valuation" for a county, and that is all of the property assessed for taxation as shown by the tax rolls. Taxable valuations of drainage or other districts is but a segregation of a portion of the total taxable values of the county for purposes of levying special taxes thereon. The mere fact that a portion of the taxable valuations of the county may be used by common school, drainage, or road districts does not in any way add to or increase the total taxable valuations of the county, as such districts merely use the portion of the property situated within their respective boundaries for the purpose of special tax levies. Regardless of the number of road, school, drainage or other districts that may be formed within the county, the total taxable valuation of the county would remain the same, because such valuation originally includes all of the property within the county assessed for taxation.

[2] It is further insisted that the commissioners' court, in passing on defendant in error's claim, was not limited to the taxable valuations as shown by the official tax rolls, and that as against a collateral attack it will be presumed that such court found as a fact that the total taxable valuations for Cameron county was in excess of $30,000,000. We think, in view of the fact that the Legislature,

in enacting this statute, fixed no method of ascertaining the total taxable valuation, it was evidently intended that the court, in obtaining such information, should look alone to the official assessment prescribed by law. Citizens' Bank v. City of Terrell, 78 Tex. 459, 143 S. W. 1003.

The contention is also made that the power and authority of the commissioners' court to hear and determine such claims involved the right to determine the existence of facts conferring jurisdiction, and that, even if the determination of such question by the court was erroneous, this issue of fact could not be inquired into collaterally, but could only be properly reviewed on appeal.

[3] We think the rule invoked cannot be applied to the action of the commissioners' court in allowing this claim, for the reason that the statute under which the same was allowed has no application to Cameron county, unless its total taxable valuations are in excess of $30,000,000. Unless the condition stated in the statute existed in Cameron county, the commissioners' court was wholly lacking in power or authority to allow such claim.

[4] Article 7564, Vernon's Sayles' Civil Statutes 1914, makes it the duty of the commissioners' court to receive annually all the assessment lists or books of the assessors of their county for inspection, correction, or equalization and approval, and provides that, after they have "inspected and equalized as nearly as possible, they shall approve said lists or books and return same to the assessors for making up the general rolls, when said board shall meet again and approve the same, if same be found correct." It therefore appearing that the commissioners' court of Cameron county was the tribunal charged by law with the duty of inspecting and approving the identical tax rolls by which the information as to the total taxable valuation of the county was shown, it must be held that, at the time it approved defendant in error's claim, it judicially knew that such valuations were less than $30,000,000, and that it was without jurisdiction to approve or allow the claim in question. In the face of this knowledge, no presumption will be indulged that it found a different total taxable valuation.

[5] That the commissioners' court must take judicial knowledge of a matter which the law requires it to pass upon was determined by the Supreme Court in the case of Flatan v. State, 56 Tex. 93. It was there held that the commissioners' court judicially knew whether or not a relator in a case of quo warranto had refused to qualify for an office by giving a proper and sufficient bond, for the reason that "under the law it was the tribunal required to pass upon the sufficiency of the bonds."

At the time the commissioners' court of Cameron county allowed defendant in error's

claim, it had theretofore examined and approved the tax rolls showing the total taxable valuations of the county to be less than $30,000,000. Therefore, when defendant in error presented his claim to the commissioners' court, it was in the same attitude as if the claim had shown on its face that the total taxable valuations of the county were less than such sum. The record affirmatively showing that the commissioners' court was without jurisdiction, its action in approving defendant in error's claim was wholly void; hence subject to collateral attack.

[6] Notwithstanding the payment to defendant in error was voluntarily made, the same being without lawful authority, the amount so paid may be recovered in an action by the county. Day Co. v. State, 68 Tex. 526, 4 S. W. 865; Wayne County v. Reynolds, 126 Mich. 231, 85 N. W. 574, 86 Am. St. Rep. 541; Board of Sup'rs of Richmond County v. Ellis, 59 N. Y. 620; Ada County v. Gess, 4 Idaho, 611, 43 P. 71; Norfolk County v. Cook, 211 Mass. 390, 97 N. E. 778, Ann. Cas. 1913B, 650; Allegheny County v. Grier, 179 Pa. 639, 36 A. 353; City of New Orleans v. Finnerty, 27 La. Ann. 681, 21 Am. Rep. 569; Allen v. Commonwealth, 83 Va. 94, 1 S. E. 607; State v. Young, 134 Iowa, 505, 110 N. W. 292, 13 Ann. Cas. 345; Lamar v. Lamar, 261 Mo. 171, 169 S. W. 12, Ann. Cas. 1916D, 740; Wiles v. McIntosh Co., 10 N. D. 594, 88 N. W. 710; Ann. Cas. 1913B, 650, and note; 30 Cyc. p. 1301, and authorities in note 19; 21 R. C. L. §§ 205–207.

We recommend that the judgment of the Court of Civil Appeals reversing the judgment of the trial court be reversed, and the judgment of the trial court affirmed.

GREENWOOD and PIERSON, JJ. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.